*DEVON JORDAN TAYLOR V. STATE OF MARYLAND*
Case No. 2190, September Term, 2016; S.O.B. Docket, 11/16/2017
Opinion by Harrell, J.

**HEADNOTES**

**APPELLATE PROCEDURE – PRESERVATION – MARYLAND RULE 4-325(e) – SUBSTANTIAL COMPLIANCE**

The Court of Special Appeals held that a challenge to a trial court's allegedly erroneous jury instruction was preserved for appellate review where the party alleging the error complied substantially with Maryland Rule 4-325(e). The trial judge included an unrequested anti-CSI effect jury instruction (at the dawn of Maryland's anti-CSI effect jurisprudence when *Evans v. State*, 174 Md. App. 549, 570-71 922 A.2d 620, 632-33 (2007), was the sole reported opinion on the subject), which instruction he had given in prior cases, and then asked counsel whether there were any additions or exceptions to the given instructions. Taylor asserted a blanket objection to the court's anti-CSI effect jury instruction. The trial judge noted Taylor's objection, but did not request a further explanation from Taylor as to his grounds. The appellate court inferred that the trial judge and counsel were conversant with *Evans*, including its concern that such an instruction might be problematic if it operated "ultimately to relieve the State of its burden of persuasion in a criminal case." The trial judge appeared to comprehend the thrust of Taylor's exception within the context of *Evans.* Taylor's general objection, while not specifying the grounds, complied with the purpose of Md. rule 4-325(e) in these particular circumstances.

**POST CONVICTION – BELATED APPEAL – DIRECT APPEAL**

Belated appeals have been permitted when a timely direct appeal was attempted, but thwarted by the action of State officials, or when a defendant is denied an appeal through no fault of his own. The Uniform Post-Conviction Procedure Act contemplates that belated appeals insure remedially that a defendant receive a full appellate review of his or her case as if his or her appeal had been timely and properly pursued. The Court of Special Appeals concluded that a belated appeal, granted as post-conviction relief, restores the opportunity for the retrospective application of case law decided after the trial in question.

**POST CONVICTION – CRIMINAL PROCEDURE – ANTI CSI EFFECT JURY INSTRUCTION – HARMLESS ERROR**

The Court of Special Appeals held that the trial judge's anti-CSI effect jury instruction fell within the prohibited circumstances staked-out in *Robinson v. State*, 436 Md. 560, 580, 84 A.3d 69, 81 (2014), *Stabb v. State*, 423 Md. 454, 31 A.3d 922 (2011), and *Atkins v. State*, 421 Md. 434, 26 A.3d 979 (2011). Although the trial judge erred by giving preemptively a CSI effect instruction, the Court was satisfied beyond a reasonable doubt that the error was harmless. There was a direct eyewitness identification of Taylor by the victim as the

perpetrator, which we have found in many cases to be sufficient unto itself to permit a jury to find guilt beyond a reasonable doubt. Any fingerprint or DNA evidence connecting Taylor to the crime scene (although none was offered) would have bolstered the victim's testimony, but would have been cumulative and thus not essential in the State meeting its burden of proof.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2190

September Term, 2016

_____

DEVON JORDAN TAYLOR

v.

STATE OF MARYLAND

_____

Wright,
Kehoe,
Harrell, Glenn T., Jr.
        (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Harrell, J.
_____

Filed:  April 2, 2018

"Lucy, you got some 'splainin' to do."[1]

Desi Arnaz (as Ricky Ricardo) to
Lucille Ball, "I Love Lucy."
(CBS, 1951-57)

Appellant, Devon Taylor, condemns the Circuit Court for Wicomico County for abusing its discretion during his 4 December 2008 criminal trial. The principal vehicle of abuse was the giving preemptively and *sua sponte* by the trial judge of an "anti-CSI effect"[2] instruction to the jury, which had the now asserted effect of relieving the State of meeting its high burden of proof. As a result, he maintains that the instruction invaded the province of the jury and deprived him of a fair trial. Moreover, the trial judge abused his discretion further by "coercing the jury to come to a verdict," and by relying impermissibly on certain considerations in sentencing Taylor.

Appellee, the State of Maryland, responds that Taylor failed to preserve properly his challenge to the CSI effect jury instruction because his objection "failed to state distinctly the matter to which he objected and the grounds of the objection," as required by Md. Rule 4-325(e). Furthermore, the State maintains that the trial judge adhered to the

---

[1] This sums-up the challenge for each appellate judge as he/she puts pen to paper (or fingers to keyboard) when composing an opinion. The opinion in the present case requires rather a lot of "splainin."

[2] This instruction will be referred hereafter sometimes as a "scientific evidence instruction," "CSI jury instruction," "CSI effect jury instruction," or as "anti-CSI effect jury instruction." "CSI" stands for "Crime Scene Investigation," referring to the TV crime show of the same name where the role of forensic evidence is emphasized. *See Atkins v. State*, 421 Md. 434, 456, 26 A.3d 979, 991 (2011) (Harrell, J. concurring).

language of the Maryland Pattern Jury Instructions (MPJI) when instructing the jury regarding the unanimity requirement, and sentenced properly Taylor.

At the end of the day, although we shall hold that the trial judge abused his discretion in propounding to the jury the CSI effect instruction, the error was harmless, beyond a reasonable doubt, on this record. Moreover, we hold that Taylor waived his challenge to the trial judge's continuing deliberation instruction to the jury. Finally, the trial court did not abuse its discretion in considering evidence of Taylor's adult and juvenile records during sentencing. Consequently, we affirm the judgment of the circuit court.

## The Facts

The following evidence was adduced by the State at trial. On the morning of 13 June 2008, the victim was alone in her apartment in Salisbury. At approximately 1:00 a.m., someone knocked on her front door. She opened the door "just a crack" and saw a nude man masturbating, while standing to the left on her patio and looking at, but not facing directly, her. As she was shutting the door, the man tried unsuccessfully to push his way in. The victim locked the door and dialed 9-1-1. The man broke the lock on the door and entered the apartment. He wore only a t-shirt hanging around his neck, which he pulled over the lower part of his face upon entering the apartment. The shirt, according to the victim, fell to his neck and revealed his full face during the encounter.

The victim ran to her kitchen and retrieved a 12-inch knife. The man approached her and "grabbed or touched her arm" holding the knife. She was able to twist her arm free, which, in the process, caused the knife to make contact with the intruder, without

2

inflicting apparent injury.[3]  The victim was able to see clearly the man's face because her living room lights, and possibly her kitchen lights, were on during the encounter in the apartment.

The man backed-off when the knife touched him.  Then, he noticed the victim's purse on the kitchen counter.  He seized the purse, containing the victim's wallet, and fled the apartment.  The victim testified that the incident lasted "three to four minutes."

Officer Baker arrived at the scene at 1:03 a.m., shortly after the man fled.  He observed "golf-ball sized holes or dents" in the victim's apartment door.  The victim told Officer Baker that the intruder was "medium skinned with no tattoos or scars, and that he had a grey t-shirt around his neck."[4]  The officer did not seize the knife from the crime scene for forensic testing.

Later, Detective Corporal Richard Kaiser became the lead investigator regarding the incident.  During his review of the police case file compiled to that point, he noticed that the apartment door had not been processed for fingerprints or the holes/dents photographed. Detective Kaiser contacted the property manager for the apartment complex and learned that a maintenance person had replaced the victim's door, moving her former door to another apartment in the complex.  He went to the location of the "suspect" door and dusted its knob for prints.  No usable fingerprints were recovered.  Detective Kaiser noted also that the door had several large "golf ball size[d]" dents in it.  He too did not seize the

---

[3] Officer Eric Baker, of the Salisbury Police Department, testified that the victim told him later that she did not think that the knife touched the man.

[4] Officer Baker wrote in his notes that the victim told him the man was wearing a "white tee shirt."

3

victim's kitchen knife[5] for forensic examination nor attempt to secure any fingerprints from inside the apartment.

On 12 July 2008, one month after the incident, Detective Scott Elliott requested the victim look at a photo array to see if she could identify anyone as the person who exposed himself to and robbed her. She identified Taylor after "4 seconds."

The State charged Taylor in the circuit court with first, third, and fourth-degree burglary, attempted second-degree rape, robbery, second-degree assault, indecent exposure, malicious destruction of property, and theft less than $100. At the close of the evidence at his trial, during jury instructions, the following occurred:

> [The Court to the jury]: There is no legal requirement that the State offer scientific evidence as part of its case, such as DNA, fingerprinting, blood typing, fiber analysis, hair follicle analysis, or anything of that nature.[6]
>
> *      *      *
>
> [At the close of all instructions]
>
> [The Court to counsel]: Any additions or exceptions?
>
> [Taylor's Counsel]: We would except, [y]our Honor.
>
> [The Court]: Yes.
>
> *      *      *
>
> [Taylor's Counsel]: Your honor, I would just except to the Court's scientific evidence instruction.
>
> [The Court]: All right.

---

[5] Detective Kaiser opined that he did not believe the knife had any evidentiary value.
[6] Neither party requested the instruction.

4

The jury convicted Taylor of all charges, save attempted second-degree rape.[7]  The trial court "sentenced [Taylor] to [seventeen] years for count one, first-degree burglary; ten years for count four, robbery; and three years for count seven, indecent exposure.  The sentences were to run consecutively, for a total of [thirty] years executed time.  The remaining convictions merged."

No appeal was filed timely.  Appellant filed a *pro se* petition for post-conviction relief on 9 June 2016, alleging that his trial attorney's performance was ineffective and prejudiced Taylor's rights by failing to "file both a notice of appeal and an application for review of his sentence by a three-judge panel."  On 1 December 2016, Taylor's recently-acquired post-conviction public defender (joined by the State and accepted by the circuit court) entered into "a consent order that [among other forms of relief] allowed [Taylor] to file a belated notice of appeal [from his 2008 conviction] and [an] application for review of his [2008] sentence in exchange for waiving his right to pursue any further post-conviction relief." Accordingly, Taylor filed, on 29 December 2016, a Notice of Appeal. This is the posture in which the matter reaches us.

In this appeal, Appellant frames the following questions:

I.     Did the trial court err when propounding to the jury an anti-CSI effect instruction;

II.    Did the trial court commit reversible error by coercing the jury to come to a verdict; and

III.   Did the trial court consider evidence impermissibly in sentencing Taylor to thirty years executed time where the sentencing guidelines called for 1-5 years?

---

[7] The State dismissed the attempted second-degree rape charge.

## Analysis

### I. The CSI Effect Jury Instruction.

#### a. *Appellant's Argument.*

Taylor maintains that the trial judge committed reversible error when, *over Taylor's objection*, he propounded preemptively and spontaneously a CSI effect instruction to the jury. Relying on *Stabb v. State*, 423 Md. 454, 31 A.3d 922 (2011) and *Atkins v. State*, 421 Md. 434, 26 A.3d 979 (2011), Taylor asserts that the trial judge's CSI effect jury instruction invaded the province of the jury, relieved the State of its burden of proof, and deprived Taylor of his right to a fair trial. Although Taylor's trial occurred in 2008 (before the Court of Appeals decided *Stabb* and *Atkins*), the case is before us as a belated appeal from his convictions because of the consent order granting his post-conviction petition, which transmogrified the proceeding into a direct appeal from the final judgment entered by the circuit court in December 2008. *Stabb* and *Atkins*, therefore, should compel us to hold that the instruction administered here was an abuse of the trial court's discretion, based either on a contemporary application to this appeal of the CSI effect cases decided after Taylor's 2008 trial or a retrospective application of that case law, as permitted by *Allen v. State*, 204 Md. App. 701, 42 A.3d 708 (2012).

In response to the State's non-preservation argument, Taylor protests that he preserved the CSI effect jury instruction issue by objecting timely to the court's scientific evidence instruction. Taylor urges, alternatively, that should we hold inadequate his objection as not in strict compliance with Md. Rule 4-325(e), we ought to hold his effort

6

sufficient to have complied substantially with the rule. If all else fails, Taylor asserts that we should consider his contention under plain error review.

b. *Appellee's Arguments.*

The State argues that Taylor failed to preserve his objection to the CSI effect jury instruction for appellate review. Under Md. Rule 4-325(e), Taylor was obliged to "state[] distinctly the matter to which the party objects and the grounds of the objection." Taylor fell short of that mark because he offered the trial court no explication of the grounds for his objection to the CSI effect jury instruction. Moreover, substantial compliance with Md. Rule 4-325(e) by making only a general objection cannot be adequate because, at the time of Taylor's trial, the trial judge did not have the benefit of the holdings and reasoning of *Stabb* and *Atkins* to appreciate that what he did may not have been appropriate on the trial record before him. Thus, "it is unfair to hold the trial court to that standard, when under *Evans v. State*[, 174 Md. App. 549, 922 A.2d 620 (2007)], [(the only reported appellate case on this area of law at the time of Taylor's trial)] the instruction was proper." The State maintains that Taylor's case, as a belated appeal, is not a direct appeal. Thus, *Allen v. State* is inapplicable to our analysis of this proceeding.

The State contends finally that, even if this Court were to find the CSI effect jury instruction challenge preserved, the error, if any, was harmless. The complained-about missing forensic evidence, i.e., Taylor's DNA or fingerprints linking him to the crime scene, was not essential to the State's case-in-chief meeting the standard of guilt proven beyond a reasonable doubt.

c. *Preservation.*

Maryland Rule 4-325(e), governing objections to jury instructions, states:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

This rule "makes clear that an objection to a jury instruction is not preserved for review unless the aggrieved party makes a timely objection after the instruction is given *and states the specific ground of objection thereto*." *Gore v. State*, 309 Md. 203, 207, 522 A.2d 1338, 1339 (1987) (emphasis added). While "general" objections may be sufficient to preserve appellate arguments in some contexts, i.e., the admissibility of evidence, *see* Md. Rule 4-323(a),[8] Md. Rule 4-325(e) requires a distinct and specific objection to a jury instruction to preserve the challenge for appeal. *See Newcomb v. Owens*, 54 Md. App. 597, 603, 459 A.2d 1130, 1134 (1983). The principal reason for this standard is

---

[8] Md. Rule 4-323(a) provides that:
An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. *The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs*. The court shall rule upon the objection promptly. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled.
(Emphasis added).

to enable the trial court to correct any inadvertent error or omission in the oral charge, as well as to limit the review on appeal to those errors which are brought to the trial court's attention.' In this manner, the trial judge is afforded 'an opportunity to amend or supplement his charge if he deems an amendment necessary.' Succinctly put, then, the rule is designed to afford the trial judge and opposing counsel ample opportunity to be informed of the nature and grounds of the exception.

*Sergeant Co. v. Pickett*, 283 Md. 284, 288, 388 A.2d 543, 546 (1978).

Although Taylor objected timely to the trial judge's CSI effect instruction by stating, "Your honor, I would just except to the Court's scientific evidence instruction," he failed to state any explicit grounds for his objection. Thus, we must hold that Taylor's objection failed to comply strictly with Md. Rule 4-325(e).

Taylor's first fallback position is that we should find his challenge preserved nonetheless under the standard of substantial compliance with the rule. To show substantial compliance with Md. Rule 4-325(e):

There must be an objection to the instruction; the objection must appear on the record; the objection must be accompanied by a definite statement of the ground for objection *unless the ground for objection is apparent from the record[,]* and the circumstances must be such that a renewal of the objection after the court instructs the jury would be futile or useless.

*Gore*, 309 Md. at 209, 522 A.2d at 1341 (emphasis added). No ground need be stated "where the record makes clear that all parties and the court understood the reason for the objection." *Exxon Corp. v. Kelly*, 281 Md. 689, 694 n. 6, 381 A.2d 1146, 1149 n. 6 (1978). In the limited and unique context of this case, we believe that the judge could infer reasonably the grounds for Taylor's objection, consistent with his appellate argument.

Taylor's trial took place on 4 December 2008. At the time, the only guidance (in a then uncluttered area of Maryland jurisprudence) regarding CSI effect jury instructions was *Evans v. State.*[9] We infer that the trial judge and trial counsel were aware of *Evans.*

Evans and his co-defendant, Antwan Peaks, were convicted on heroin possession-related charges. *Evans*, 174 Md. App. at 552, 922 A.2d at 622. Evans' and Peaks' convictions were grounded on the eyewitness testimony of a police officer who was conducting the relevant undercover narcotics purchase. *Evans*, 174 Md. App. at 555, 922 A.2d at 624. During Evans' trial, the judge instructed the jury:

> During this trial, you have heard testimony of witnesses and may hear argument of counsel that the State did not utilize a specific investigative technique or scientific tests. You may consider these facts in deciding whether the State has met its burden of proof. You should consider all of the evidence or lack of evidence in deciding whether a defendant is guilty. *However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case.* Your responsibility as jurors is to determine whether the State has proven, based on the evidence, the defendants' guilt beyond a reasonable doubt.

*Evans*, 174 Md. App. at 570-71, 922 A.2d at 632-33 (emphasis added). Peaks objected to the instruction, noting that "'[he had] not previously seen this instruction given in the Circuit Court for Baltimore City. . . .' The objection, duly noted by the court, was overruled." *Evans*, 174 Md. App. at 564, 922 A.2d at 629. Evans failed, however, to object to the CSI effect jury instruction on his own behalf or join Peaks' objection. We held "[Evans'] failure to raise such issue in the trial court precludes us from such consideration

<hr>

[9] *Atkins v. State* and *Robinson v. State* criticized subsequently, but did not overrule, *Evans v. State*. *See Robinson v. State*, 436 Md. 560, 573-76, 84 A.3d 69, 77-79 (2014); *Atkins v. State*, 421 Md. 434, 449-51, 26 A.3d 979, 987-88 (2011).

on appeal." *Evans*, 174 Md. App. at 566, 922 A.2d at 630. In what amounted to considered dicta, however, we proceeded to analyze the appropriateness of the CSI effect jury instruction. *Id.*

In considering the propriety of the instruction, we explained that the absence of forensic evidence, i.e., photographic or video evidence of the actual heroin sale transaction, was not material in assessing whether the State fulfilled its burden of proof. *Evans*, 174 Md. App. at 570-71, 922 A.2d at 633. Although the admission of such evidence would have "made the discharge of the jury's duty easier," the evidence the State did adduce was sufficient. *Id.* Moreover, we commented that the instruction was "a correct statement of the law, was applicable to the facts in the case and was not fairly covered by other instructions given[,]" and the "robust and vehement closing arguments of counsel . . . warranted [further] giving the instruction." *Evans*, 174 Md. App. at 570, 922 A.2d at 632. Although *Evans* spoke approvingly of the CSI effect instruction given there, the court ruminated that such an instruction might be problematic if it operated "ultimately, to relieve the State of its burden of persuasion in a criminal case." *State v. Evans*, 278 Md. 197, 207, 362 A.2d 629, 635 (1976)." Thus, our second inference is that the circuit court and defense counsel here understood the foregoing to be the ground for Taylor's objection, consistent with his later appellate assertions.

There is a strong presumption that trial judges know the law.[10] *See State v. Chaney*, 375 Md. 168, 181, 825 A.2d 452, 459 (2003). *Evans*, coupled with the *particular circumstances of this direct appeal* (on which we shall amplify later), enable us to infer that the trial judge appreciated the grounds for Taylor's objection. Thus, Taylor's objection preserved adequately for appellate review the question of the claimed error of the giving of the CSI effect instruction, satisfying the underlying purpose of Md. Rule 4-325(e). *See Pickett*, 283 Md. at 289, 388 A.2d at 546.

Case law considering the preservation of a question for appeal is vast. The majority of the cases deal primarily with wholly un-objected-to-instructions[11] or a trial irregularity that was objected to at one point, but which went un-noticed when the same or similar irregularly repeated itself later in the trial.[12] We find the following cases, however, persuasive in our consideration of the sufficiency of Taylor's objection.

---

[10] The trial judge in this case indicated that he had given this CSI effect jury instruction in other cases. We do not know from this record, however, how frequently it was given or whether objections were interposed on those prior occasions.

[11] *See Miller v. State*, 380 Md. 1, 843 A.2d 803 (2004); *Jones v. State*, 229 Md. 472, 184 A.2d 809 (1962); *Tichnell v. State*, 287 Md. 695, 415 A.2d 830 (1980); *Malaska v. State*, 216 Md. App. 492, 88 A.3d 805 (2014); *Robinson v. State*, 209 Md. App. 174, 58 A.3d 514 (2012); *Somers v. State*, 156 Md. App. 279, 846 A.2d 1065 (2004); *Myerberg, Sawyer & Rue v. Agee*, 51 Md. App. 711, 446 A.2d 69 (1982); *Huff v. State*, 23 Md. App. 211, 326 A.2d 198, *cert. denied*, 273 Md. 721 (1974); *White v. State*, 8 Md. App. 51, 258 A.2d 50 (1969), *cert. denied*, 257 Md. 736 (1970); *Mason v. State*, 18 Md. App. 130, 305 A.2d 492 (1973).

[12] *Horton v. State*, 226 Md. App. 382, 130 A.3d 1002 (2016); *Chaney v. State*, 42 Md. App. 563, 402 A.2d 86 (1979), *rev'd on other grounds*, 304 Md. 21, 497 A.2d 152 (1985); *Randolph v. State*, 193 Md. App. 122, 996 A.2d 907 (2010); *Morrow v. State*, 47 Md. App. 296, 423 A.2d 251 (1980), *aff'd*, 293 Md. 247, 443 A.2d 108 (1982).

In *Moats v. Ashburn*, involving a predecessor to Md. Rule 4-325(e),[13] "the trial judge issued instructions to the jury, which prompted an objection from [Moats]." 60 Md. App. 487, 492, 483 A.2d 791, 794 (1984). Moats' objection was: "Just for the record your Honor, I make an objection to the instruction on the unavoidable accident." *Id.* Ashburn asserted that "this exception to the instruction was insufficient because [Moats] failed to specify to the trial court the portion of the instruction to which they objected and the basis or ground upon which the objection was made." *Id.* We disagreed, finding that there was substantial compliance with the predecessor to Md. Rule 4-325(e) because "[Moats] specifically objected to the portion of the trial court's instructions dealing with the unavoidable accident." *Id.* The record made clear that the parties and court understood the reason for the objection: "that the facts of the case did not fit the instruction." *Ashburn*, 60 Md. App. at 492-93, 483 A.2d at 794.

In *Kissinger v. State*, 117 Md. App. 372, 374, 700 A.2d 795, 796 (1997), we found Kissinger's objection preserved for appeal,[14] which stated:

---

[13] *Compare* Md. Rule 2-520(e) (1984) ([i]f a party has an objection to any portion of any instruction given, or to any omission therefrom, or the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion or omission, or failure to instruct to which he objects and the ground of his objection.), *with* Md. Rule 4-325 (e) (2017)(No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection).

[14] The trial judge instructed the jury that

> The Defendant did not testify in this case. The Defendant has an absolute constitutional right not to testify. The fact that the Defendant did not testify must not be held against the Defendant. It must not be considered by you in any way or even be discussed by you.

*Kissinger v. State*, 117 Md. App. 372, 374, 700 A.2d 795, 796 (1997).

> Your honor, I want to make an exception to one of your instructions that wasn't requested and you gave and I am not going to argue it, but I am going to make my exception. You instructed the Jury about inferences with respect to someone testifying. *That was not an instruction that anybody requested and it's an instruction that I never requested.*

(Emphasis added). This objection was not "distinct" as required under Md. Rule 4-235(e). *Kissinger*, 117 Md. App. at 375, 700 A.2d at 796. It was clear, however, that Kissinger was referring "to that [instruction] which informed the jury not to draw any inferences from the defendant's failure to testify." *Id.* We noted that it appeared evident to the trial judge what Kissinger was objecting to because the trial judge acknowledged by stating "'Okay. You have your exception.'" *Id.* We explained that

> counsel told the court that he had not requested the instruction, which is the only reason he could give to the court for his objection. The instruction was not erroneous and, consequently, there was nothing that the court could do at that point to overcome appellant's objection. Further elaboration and objection would have been futile and useless.

*Id.*

In *Sergeant Co. v. Pickett*, Pickett noted several exceptions to the court's failure to include certain requested instructions. 283 Md. at 286, 388 A.2d at 545. Pickett asserted, "I would take exception to [the] failure of the Court to instruct the jury on plaintiff's requested instruction one . . . two . . . three . . . four . . . six . . . and ten, unavoidable consequences." *Id.* The judge denied Pickett's exceptions as to all save number six, noting "All right. I will give six . . . I don't think [ten] is applicable to this one. I will give six." *Pickett*, 283 Md. at 286-87, 388 A.2d at 545 (1978). The appellate court found the objections preserved because they satisfied the purpose of the precursor rule to Md. Rule

14

4-325(e),[15] i.e., to allow the trial judge "an opportunity to amend or supplement his charge if he deems an amendment necessary." *Pickett*, 283 Md. at 288, 388 A.2d at 546 (quoting *State v. Wooleyhan Transport Co.*, 192 Md. 686, 689-90, 65 A.2d 321, 322 (1949)). We held that

> appellants did not confine their objection to a simple reference to the prayer by number . . . . Counsel mentioned 'unavoidable (sic) consequences,' which, when coupled with a mere cursory reading of the proffered instruction, was sufficient to identify for the trial judge the nature and ground of the objection. That the court fully comprehended the legal contention being offered by appellants and also regarded further argument unnecessary is manifest from its measured response: 'I don't think it is applicable to this one.' . . . Here, further exposition by appellants' counsel of the 'ground' for the principle of law reflected by the instruction would have been both fruitless and unnecessary insofar as the rule was concerned. Once the trial court had signified *that it comprehended the precise point being asserted . . . the requirements of the rule had been met. At a minimum, this certainly represented substantial compliance with Rule 554 d and e, and, we hold, was therefore sufficient to preserve the issue for appellate review.

*Pickett*, 283 Md. at 289-90, 388 A.2d at 546-47 (emphasis added).

In a more recent and relevant analysis of the sufficiency of an objection in *Samba v. State*, the trial judge, at the State's request, charged the jury with a CSI effect instruction.[16] 206 Md. App. 508, 513, 49 A.3d 841, 844 (2012). Samba objected "because

---

[15] *Compare* Md. Rule 554 d (1978) (if a party has an objection to any portion of any instruction given, or to any omission therefrom, or the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion or omission, or failure to instruct to which he objects and the ground of his objection), *with* Md. Rule 4-325 (e) (2017)(No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.).

[16] The judge instructed:

During this trial you have heard testimony of witnesses and may hear arguments of counsel that the State did not utilize a specific investigative

15

[he thought] that the general instructions on reasonable doubt, amount of proof, number of witnesses, and the like cover that." Brief for Appellee at 4, *Samba*, 206 Md. App. 508, 49 A.3d 841, (No. 1895), 2011 WL 5566181 at *5. The State challenged, on appeal, Samba's objection asserting that it failed to comply with Md. Rule 4-325(e), thus rendering his appellate question unpreserved. *Samba*, 206 Md. App. at 529, 49 A.3d at 853 (2012). We disagreed because "appellant's objection was similar to the defense objection in *Atkins* that the pattern instruction on reasonable doubt 'sufficiently covered' the objectives of the "anti-CSI effect" instruction, which the Court of Appeals treated as having preserved that jury instruction challenge for appellate review." *Samba*, 206 Md. App. at 530, 49 A.3d 854 (citing *Atkins*, 421 Md. at 441 n. 5, 26 A.3d 979).

The judge in the present case administered, *sua sponte*, the CSI effect jury instruction and then asked counsel whether there were "any additions or exceptions," prompting Taylor's timely objection. Taylor iterated "Your honor, I would just except to the *Court's* scientific evidence instruction," to which the trial judge stated "all right." The purpose of Md. Rule 4-325(e) is "to afford the trial judge and opposing counsel ample opportunity to be informed of the nature and grounds of the exception" such to allow the court an opportunity to address the deficiency. *Pickett*, 283 Md. at 288, 388 A.2d at 546. The trial court, like the judge in *Pickett*, appeared to comprehend the thrust of Taylor's

technique or scientific test. However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove this case. Your responsibility as jurors is to determine whether the State has proven based solely on the evidence presented the defendant's guilt beyond a reasonable doubt.

*Samba v. State*, 206 Md. App. 508, 513, 49 A.3d 841, 844 (2012).

16

exception within the context of *Evans*. Notably, this was also not the first occasion for this judge to give such an instruction. Moreover, the judge did not request a further explanation from Taylor as to his grounds.

We noted in *Kissinger* that counsel's general objection was adequate to preserve the appellate issue raised because the trial judge acknowledged Kissinger's objection. *Kissinger*, 117 Md. App. at 374, 700 A.2d at 796. Counsel's explanation in *Kissinger* (that the instruction was not requested by any party) was the only reason he could give the court for his objection. *Id.* The instruction in *Kissinger* was not erroneous, a misstatement of law, or overtly prejudicial. Analogously, the trial judge here acknowledged affirmatively Taylor's objection and, by not asking for further explanation, acknowledged implicitly also that he was aware that Taylor was objecting to the appropriateness of the CSI effect instruction.

Taylor's general objection was specific to the court's *sua sponte* CSI effect instruction. The judge, after acknowledging that he had given this instruction in earlier cases, stated that he believed it was warranted here because it "has been generated by the evidence, and *perhaps* will be argued by [Taylor] concerning scientific evidence. Or lack thereof." (emphasis added). Taylor's objection put the trial judge on notice of his dissatisfaction with the instruction. It does not strain credulity to imagine, from his conduct of the defense, that Taylor's counsel wanted to impress on the jury that the State had not met its burden of proof because it lacked forensic evidence; however, the judge's instruction minimized that argument and could be interpreted as implying that such a void was of no legal consequence.

17

As noted previously, the trial judge and the parties here had only *Evans* and the judge's prior practice of giving this same or similar instruction to guide them. Although *Stabb* and *Atkins* took a different view than *Evans* regarding CSI effect messages and *Atkins* distinguished *Evans*, *Evans* was "it" at the time of Taylor's 2008 trial.[17]

Consequently, we conclude that Taylor's objection at trial complied substantially with Md. Rule 4-325(e). *See Watts v. State*, No. 17, September Term, 2017, ___ Md. ___ (2018). Therefore, we shall view the trial judge's giving of the jury instruction under an abuse of discretion standard. *Stabb*, 423 Md. 454, 465, 31 A.3d 922, 928 (2011). The abuse of discretion standard explains that:

> a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*King v. State*, 407 Md. 682, 697, 967 A.2d 790, 799 (2009).

The Sixth Amendment[18] and Article 21 of the Maryland Declaration of Rights[19] grant to criminal defendants not only the right to effective assistance of counsel, but also "the right to a fair trial, which includes a requirement that trial judges refrain from making

---

[17] The academic research on the so-called "CSI effect" was even more thin at the time of *Evans* and Taylor's trial than it was at the time of *Atkins* and *Stabb. See infra* n.25.

[18] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right is applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwrigh*t, 372 U.S. 335, 343, 83 S. Ct. 792 (1963).

[19]Article 21 of the Maryland Declaration of Rights declares: "That in all criminal prosecutions, every man hath a right to . . . be allowed counsel[.]" *Taylor v. State*, 428 Md. 386, 399 n. 8, 51 A.3d 655, 662 n. 8 (2012).

statements that may influence improperly the jury." *Stabb*, 423 Md. at 463, 31 A.3d at 927.

Moreover, "Article 23 of the Maryland Declaration of Rights provides [also], in relevant part, that the Jury shall be the Judges of the Law, as well as of fact . . . ," which limits trial judges from giving jury instructions that comment on evidence properly before the jury. *Stabb*, 423 Md. at 463-64, 31 A.3d at 927 (citing *Gore*, 309 Md. at 210, 522 A.2d at 1341). Thus, "a defendant has the right to be tried by a fair and impartial jury," Md. Dec. of Rts. Art. 21, and the "'jury is the exclusive judge of the fact[s].'" *Atkins*, 421 Md. at 443, 26 A.3d at 983 (quoting *Gore*, 309 Md. at 210, 522 A.2d at 1341 (citing Md. Dec. of Rts. Art. 23)). In that process, trial judges occupy an authoritative position, such that they:

> should be exceedingly careful in any remarks made by [them] during the progress of a trial, either in passing upon evidence or ruling upon prayers, and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should be left to the finding of the jury . . . .

*Gore*, 309 Md. at 212, 522 A.2d at 1342 (quoting *Elmer v. State*, 239 Md. 1, 10-11, 209 A.2d 776, 782 (1965)). Md. Rule 4-325(c), assisting a trial court in delivering jury instructions, whether given *sua sponte* or requested by a party, provides:

> The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

Md. Rule 4-325(c) is not entirely self-contained, however. *Gunning v. State*, 347 Md. 332, 347, 701 A.2d 374, 381 (1997). *Evans v. State*, interpreted Md. Rule 4-325(c)

> as requir[ing] the trial court to give a requested instruction under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the

19

case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given.

333 Md. 660, 691, 637 A.2d 117, 132 (1994). *Stabb* explained that an improper jury instruction in the context of an anti-CSI effect message is one that operates to relieve the state of its burden to prove a criminal defendant's guilt beyond a reasonable doubt. *Stabb*, 423 Md. at 464, 31 A.3d at 928 (citing *Evans*, 278 Md. at 207, 362 A.2d at 635).

> d. *Direct Appeal v. Belated Appeal: Does It Make a Difference to the Law To Be Applied Here?*

As noted earlier, on 1 December 2016, "post-conviction counsel [and the State and the circuit court] entered into a consent order allowing [, among other things, Taylor] to file a belated notice of appeal and application for review of his sentence in exchange for waiving his right to pursue any further post-conviction relief under the Maryland Uniform Post-Conviction Procedure Act." Taylor contends that, under the consent order, the present case should be treated as a *direct appeal*, which relates-back to when a timely appeal should have been taken in 2008 and running through the present, and, on that basis, he is entitled to the benefit of *Stabb* and *Atkins*. The State counters that, between 2008 and 2016, "[t]his case was not on direct review . . . this belated appeal is a post-conviction remedy, coming before this Court by way of a consent order from the post-conviction court." According to the State, therefore, we must review Taylor's jury instruction error contentions under *Evans* only.

Although there is not much serious consideration in Maryland cases regarding whether a "belated appeal" is a direct appeal, we think that the State's assertion is incorrect. "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all

20

cases, state or federal, pending on direct review or not yet final" and where the issue has been preserved. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708 (1987); *see also Allen*, 204 Md. App. at 721, 42 A.3d at 720.

Generally, post-conviction proceedings, under the Uniform Post-conviction Procedure Act[20] (the Act), are not unto themselves a means in which direct appellate review is given in such a proceeding, *Kelly v. Warden*, *Maryland Penitentiary*, 243 Md. 717, 718, 222 A.2d 835, 836 (1966), however:

> It was early established that [the Act] was procedural only and did not create new substantive rights not given before its passage by *habeas corpus*, *coram nobis* or other writs available at common law. *State v. McCray*, 267 Md. 111, 132-133, 297 A.2d 265[, 275] (1972); *Jordan v. State*, 221 Md. 134, 140, 156 A.2d 453[, 456] (1959); *State v. D'Onofrio*, 221 Md. 20, 28-29, 155 A.2d 643[, 647] (1959) . . . [Exceptions exist at common law] to the general rule that a post[-]conviction proceeding may not serve merely as an appeal, *Cheeseboro v. Warden* [*Of the Maryland Penitentiary*], 224 Md. 660, 661, 168 A.2d 181 (1961), and was not designed to review the regularity of judicial proceedings as an alternative to appeal[.] *Warrington v. Warden* [*Of the Maryland Penitentiary*], 222 Md. 601, 604, 159 A.2d 360, 362 (1960) . . . In certain circumstances, therefore, the lower courts have granted belated appeals under post-conviction procedures, and [our] appellate courts have entertained them.

*Wilson v. State*, 284 Md. 664, 671–72, 399 A.2d 256, 260 (1979). "There exists, [therefore,] no rule [] *preventing courts from providing belated appeals as a remedy under the* [*Act*]." *Garrison v. State*, 350 Md. 128, 139, 711 A.2d 170, 175 (1998) (citing *Wilson*,

---

[20] Md. Code (2001, 2008 Repl. Vol.,), §§ 7-101-301 of the Criminal Procedure Article. *See also* Md. Rule 4-331 (1)(B) "); (1) on motion filed within one year after the later of . . . (B) the date the court received a mandate issued by the final appellate court to consider a direct appeal from the judgment *or a belated appeal permitted as post-conviction relief*." (emphasis added).

284 Md. at 672, 399 A.2d at 260) (emphasis added).[21] Belated appeals have been permitted when "'a timely direct appeal was attempted, but thwarted by the action of State officials,'" *Wilson*, 284 Md. at 672, 399 A.2d at 260 (quoting *Sewell v. Warden*, 235 Md. 615, 618, 200 A.2d 648, 649 (1964)) (the Court granted a belated direct appeal from a post-conviction on issues not raised on direct appeal because the failure to raise such issues was due to appellate counsel's incompetence), or when a defendant is denied an appeal through no fault of his own.[22] *Beard v. Warden*, 211 Md. 658, 661, 128 A.2d 426, 427 (1957); *see*

---

[21] The lineage of "belated" or "delayed" (as referred to historically) appeals is traced to the Supreme Court's decision in *Dowd v. U.S. ex rel. Cook*, 340 U.S. 206, 209, 71 S. Ct. 262, 264 (1951); *see also Wilson v. State*, 284 Md. 664, 673, 399 A.2d 256, 261 (1979) (utilizing delayed and belated appeal interchangeably). *Dowd* held, in the context of a *habeas corpus* proceeding, that Dowd was entitled to a delayed appeal where it was determined that, after his conviction of murder in state court, the State denied him his right of appeal in violation of the Fourteenth Amendment. The Court of Appeals explicated in *Beard v. Warden Of The Maryland Penitentiary*, 211 Md. 658, 661, 128 A.2d 426, 427 (1957), that "[i]f the applicant did all that he could to note an appeal in due time and was prevented from making the appeal effective as he claims, he is entitled to a delayed appeal." (citing *Coates v. State*, 180 Md. 502, 504, 25 Md. A.2d 676 (1942); *see also Fisher v. Warden of Md. Penitentiary*, 230 Md. 612, 615, 185 A.2d 198, 200 (1962) (recognizing that a party is entitled to a delayed appeal if a State official interferes with a party's original appeal).

In a post-conviction case, the Court of Appeals in *State v. Shoemaker*, 225 Md. 639, 640-41 171 A.2d 468, 469 (1961), granted Shoemaker a delayed appeal because the accused's attorney did nothing to perfect Shoemaker's direct appeal. *Wilson* noted that the "*Shoemaker* exception to the general rule with respect to *delayed or belated appeals* has been recognized both by this Court and the Court [of Appeals]." 284 Md. at 673, 399 A.2d at 261 (emphasis added). Moreover, *Shoemaker's* inherent effect "is that the post-conviction court ha[s] the authority to grant a belated appeal in the circumstances and that the appellate court ha[s] the authority to entertain the appeal granted." *Id*. Thus, a belated or delayed appeal began as a common law phenomenon, and is now authorized in the Maryland Uniform Post-Conviction Procedure Act. *See Garrison v. State*, 350 Md. 128, 143, 711 A.2d 170, 177 (1998).

[22] *See State v. Brown*, 235 Md. 401, 407, 201 A.2d 852, 855 (1964); *State v. Cox*, 10 Md. App. 211, 214, 269 A.2d 106 , 108 (1970); *McCoy v. Warden*, 1 Md. App. 108,

*also Creighton v. State*, 87 Md. App. 736, 738, 591 A.2d 561, 563 (1991) ("Belated appeals have been allowed where it is shown that the defendant requested an appeal, but either his request was not honored or an appeal noted was summarily dismissed because of (1) actions or omissions by State officials, (2) actions or omissions by trial counsel; (3) actions or omissions by appellate counsel; or (4) State laws that violate due process." (citations omitted)); *Waters v. State*, 76 Md. App. 548, 553, 547 A.2d 665, 668 (1988).

The Act contemplates that belated appeals insure remedially that a defendant receives a full review of his or her case as if his or her appeal had been pursued timely and properly. *Wilson*, 284 Md. at 676, 399 A.2d at 263 ("In light of the legislative scheme apparent in the Uniform Post-Conviction Procedure Act, we believe that it contemplates that an accused be granted a belated appeal as a remedy to obtain full appellate review of his allegations of error, constitutional in scope, and neither finally litigated nor waived, when he has been denied his entitled appellate review of his claims due to improper action of his appellate counsel. We think that [the Act] entitles the petitioner to a belated appeal as a remedy to insure that the accused obtain as full a review as if his appeal had been properly pursued.").[23]

_____

121, 227 A.2d 375, 385 (1967); *Schaedler v. Warden*, 1 Md. App. 25, 29, 226 A.2d 684, 686 (1967).

[23] *Garrison*, discussing *Garrigan v. Superintendent*, 218 Md. 662, 665, 146 A.2d 431, 433 (1958), noted that Garrigan's case was remanded to determine whether he was misinformed by his incarcerators regarding the time permitted to file his direct appeal. *Garrison*, 350 Md. at 140, 711 A.2d at 176. If so, "and [Garrigan] reasonably relied upon that [mis-]information, . . . he should be granted a *direct belated appeal*." *Id.* (emphasis added).

We conclude that a belated appeal, granted as post-conviction relief, restores the *availability of appeal* within the meaning of *Griffith*. *See Griffith*. 479 U.S. at 321 n.6, 107 S. Ct. at 712 n.6 (a case has reached finality when "a judgment of conviction has been rendered, *the availability of appeal exhausted*, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. (citing *United States v. Johnson,* 457 U.S. 537, 542 n.8, 102 S. Ct. 2579, 2583 n.8 (1982)). We view the applicability of the law existing at the time a belated appeal is granted (restoring the timeliness of the appeal) no different than if post-conviction court were to grant a new trial.

### i. *Moreover - Allen v. State.*

Even if the State's argument had heft, Taylor is entitled to the benefit of *Stabb* and *Atkins* under the retrospectivity basis approved by *Allen v. State* because of our resolution of the preservation question. In *Allen v. State*, we addressed the conundrum whether *Atkins* and *Stabb* apply to cases "decided" before *Atkins* and *Stabb* were decided and, if so, under what circumstances. Allen's trial on a charge of possession of cocaine with intent to distribute began on 4 February 2011. *Allen*, 204 Md. App. at 703, 42 A.3d at 710. At the close of all evidence, the trial judge instructed the jury, at the State's request, employing an "anti-CSI" instruction similar to the one given by the trial judges in *Atkins* and *Stabb*:

> during the trial you've heard testimony and you may hear argument of counsel that the State did not utilize a specific investigative technique or techniques or scientific tests, I instruct you that there's no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case.

*Id*. Allen was convicted on 7 February 2011. *Allen*, 204 Md. App. at 705, 42 A.3d at 711. On appeal, Allen contended that the instruction was improper under *Atkins* (decided on 18

August 2011) and *Stabb* (decided on 22 November 2011). *Allen*, 204 Md. App. at 706, 42 A.3d at 711. The State, on the other hand, "while conceding that with the hindsight of *Atkins* and *Stabb*[] it may have been error for the court to issue the instruction challenged here, asserts that those cases should be applied only prospectively and not to convictions . . . rendered before those cases were decided." *Id.* (internal quotation marks omitted). After reviewing case law addressing the prospective/retrospective application of common law changes in criminal law,[24] we concluded that *Atkins* and *Stabb* applied to Allen's case retrospectively because there was no final disposition in Allen's case at the time those cases were decided, and the question of the propriety of the instruction had been preserved. *Allen*, 204 Md. App. at 721, 42 A.3d at 720. In concluding that *Atkins* and *Stabb* applied to our analysis of Allen's appellate questions, we noted that:

> under current Maryland law, the question of whether a new constitutional or statutory decision in the criminal law area should be applied prospectively or retroactively arises only when the decision declares a new principle of law, as distinguished from applying settled principles to new facts. If it does not declare a new principle, it is fully retroactive and applies to all cases. *Denisyuk* [*v. State*], 422 Md. [462,] 478–79, 30 A.3d 914[, 923 (2011)]. A new constitutional or statutory ruling, in the criminal law context, ordinarily applies to the facts in the case announcing the change and those cases pending on direct review in which the issue was preserved. A new constitutional or statutory decision will also be fully retroactive, i.e., apply to convictions which were final, when the change affected the integrity of the

---

[24] *Allen* relied on the well-established rule from *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708 (1987) explaining that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Allen v. State*, 204 Md. App. 701, 719, 42 A.3d 708, 719 (2012). Moreover, *Allen*, citing *Parker v. State*, 402 Md. 372, 396–97, 936 A.2d 862 (2007), noted that "a non-common law change is applicable to cases pending on appeal at the time of the announcement, [and] is limited to cases in which the issue was preserved." *Allen*, 204 Md. App. at 721, 42 A.3d at 720.

25

fact finding process or the change involved the ability to try a defendant or impose punishment.

We conclude that the *Atkins* and *Stabb* holdings apply to the case before us. There was no final judgment at the time of the *Atkins* and *Stabb* decisions, and the issue is preserved. First, as noted above, the decisions were constitutionally based. They did not announce changes in Maryland common law and, thus, are not of the type to be applied only 'to the instant case and to all criminal trials commencing and trial in progress on or after the date this opinion is filed.' *Ruffin v. State*, 394 Md. 355, 373 []n.7, 906 A.2d 360 (2006) (citations omitted).

Second, it is not clear that a retroactivity analysis is implicated. The *Atkins* and *Stabb* holdings are clearly based on constitutional principles, *Atkins*, 421 Md. at 443, *Stabb*, 423 Md. at 472, but we read the decisions not as creating new constitutionally based principles but rather as applying settled federal and State constitutional guarantees to "new and different factual situations." *Potts v. State*, 300 Md. 567, 577, 479 A.2d 1335 (1984). The Court of Appeals did not overrule our decision in *Evans*; it clarified and distinguished it. In such a case, "the decision always applies retroactively." *Id.*

Third, if *Atkins* and *Stabb* did contain new constitutional principles, the decisions come within the general rule and apply to all cases pending on direct review in which the issue was preserved.

*Allen*, 204 Md. App. at 721-22, 42 A.3d at 720-21.

### ii. *The Current Gold Standard: Robinson, Stabb, and Atkins.*

*Robinson v. State*, *Stabb*, and *Atkins* established, after pointing-out the

"inconclusive state of the scholarly legal and/or scientific research taken as a whole"[25]

---

[25] As we mentioned in *State v. Armstead*, No. 1148, 2018 WL 679866, ___ Md. App. ___, ___ A.3d. ___ at 16 n.11 (Md. Ct. Spec. App. Feb. 1, 2018):
> [t]he current state of scholarly research regarding the so-called "CSI effect" in litigation contexts remains inconclusive regarding the effect's authenticity. *Robinson*, 436 Md. at 79-81, 84 A.3d at 578-80, explicated that "in the last two years since [the Court of Appeals] issued *Stabb*, legal and empirical proof of the existence of a "CSI effect is still wanting." (elaborating further on the current state of CSI effect scholarly research); *see Stabb*, 423 Md. at 467-71, 31 A.3d at 930-32 (the Court discusses, at length, the "'CSI

regarding the existence *vel non* of a "CSI effect," that Maryland disapproves of preemptive

anti-CSI messages delivered by the court to the venire or the empaneled jury.[26] *Stabb*, 423

Md. at 473, 31 A.3d at 933 (to the extent that such an instruction is employed, its use ought

to be confined to situations where it corrects overreaching by the defense, i.e., a curative

instruction); *State v. Stringfellow*, 425 Md. 461, 473-74 n.4, 42 A.3d 27, 34-35 n.4 (2012)

("*Stabb* and *Atkins* discuss when it may be permissible for courts to pose a *voir dire*

---

Effect' Redux"); *Atkins*, 421 Md. at 457-62, 26 A.3d at 993-96 (Harrell, J., concurring) (engaging in a thorough analysis of the CSI Effect scholarly research legal landscape); *Charles & Drake*, 414 Md. at 731-33, [414] A.2d at 157-59 (analyzing the scholarly basis regarding the impact that viewing forensic crime dramas has upon juror behavior).

[26] *Compare Hall v. State*, 437 Md. 534, 540-41, 87 A.3d 1287, 1290-91 (2014) (holding a CSI jury instruction improper, but finding the instruction harmlessly given); *Robinson v. State*, 436 Md. 560, 580, 84 A.3d 69, 81 (2014) (trial court abused its discretion in giving the "anti-CSI effect" jury instruction); *Stabb v. State*, 423 Md. 454, 472, 31 A.3d 922, 933 (2011) (the "'anti-CSI effect' jury instruction given, in the circumstances of this case, was improper"); *Atkins*, 421 Md. at 452-53, 26 A.3d at 989 (finding a CSI effect jury instruction given erroneously); *Carrero-Vasquez v. State*, 210 Md. App. 504, 63 A.3d 647 (2013) (trial court's giving of a scientific evidence instruction was improper); *Samba v. State*, 206 Md. App. 508, 534, 49 A.3d 841, 857 (2012) (same), *and Evans v. State*, 174 Md. App. 549, 570-71 922 A.2d 620, 632-33 (2007) (no error in the court's CSI jury instruction), *with State v. Stringfellow*, 425 Md. 461, 476, 42 A.3d 27, 36 (2012) (holding that asking an anti-CSI *voir dire* question was unpreserved and harmless); *Burris v. State*, 206 Md. App. 89, 136-42, 47 A.3d 635, 662-66 (2012) (noting the lower court's CSI effect *voir dire* question to be a content-neutral inquiry into the standard with which jurors would review evidence), *rev'd on other grounds*, 435 Md. 370, 78 A.3d 371 (2013); *Morris v. State*, 204 Md. App. 487, 42 A.3d 83 (2012) (the lower court's CSI *voir dire* question did not in any way "'suggest[] that finding the defendant "guilty" was a foregone conclusion[]'"); *McFadden & Miles v. State*, 197 Md. App. 238, 254, 13 A.3d 68, 77 (2011) (CSI *voir dire* question improperly given), *disapproved of by Stringfellow*, 425 Md. 461, 42 A.3d 27; *Charles & Drake v. State*, 414 Md. 726, 739, 997 A.2d 154, 162 (2010) (trial judge abused discretion when asking CSI *voir dire* question), *and Kelly v. State*, 195 Md. App. 403, 434, 6 A.3d 396, 414 (2010) (noting, in the context of a waived appellate challenge for counsel's failure to object to a CSI *voir dire* question, "the record as a whole does not lead to the conclusion that the jurors were under the impression that convicting appellant was the only option.").

question or a jury instruction to counter what has been referred to popularly as the 'anti-CSI effect.' Suffice it to say, these cases hold that it is erroneous to pose such a question or instruction as a pre-emptive measure."). For a potentially valid CSI-effect message to be delivered, there must be, at minimum, some form of relevant misstatement(s) of law or over-reaching conduct by counsel before the court may issue an appropriate[27] and curative CSI effect jury instruction, or analogous anticipatory grounds to ask a *voir dire* question. *See Hall v. State*, 437 Md. 534, 540-41, 87 A.3d 1287, 1290-91 (2014). By the same token, defense counsel's mere reference to, or argument regarding (or announced intent to argue), the absence from (or insufficiency in) the State's presentation during its case of scientific evidence does not warrant, in and of itself, the court's injection of a CSI message. *See Robinson v. State*, 436 Md. 560, 580, 84 A.3d 69, 81 (2014).

We turn briefly to a consideration of *Atkins*, *Stabb* and their progeny, and their application here. Atkins was convicted of second-degree assault because he threatened the victim (in alleged self-defense) with a pocketknife. *Atkins*, 421 Md. at 439, 26 A.3d at 981.

---

[27] *Stabb*, "with a [clairvoyant] nod to the future," noted that there might be situations where CSI effect messages may be appropriate. *Stabb*, 423 Md. at 473, 31 A.3d at 933. When those situations arise, the message must be neutral, i.e., the message must not convey to the jury that their only option is to convict, even if no forensic evidence linking the defendant to the crime(s) is adduced by the State. The message should (at least) include language indicating that a not guilty verdict is an alternative. *See Charles & Drake v. State*, 414 Md. 726, 738, 997 A.2d 154, 161, (2010) (noting the language of the *voir dire* question was not neutral, "using the term 'convict," solely, rather than including its alternative."); *Samba*, 206 Md. App. at 534, 49 A.3d at 857 ("the anti-CSI effect instruction was fatally flawed for not advising the jury to consider the lack of forensic evidence in evaluating reasonable doubt.").

*Armstead*, No. 1148 at 18.

28

In the execution by the police of a search warrant for Atkins' home, they located a "non-foldable black knife, approximately 12[-]inches in length." *Id.* The police did not "perform any scientific or forensic testing on the knife[,] and there was no testimonial evidence from witnesses linking the particular knife found in Atkins' home to the crime." *Id.* After the close of the evidence, the trial judge administered to the jury, at the State's request and over defense counsel's objection, the following instruction:

> During this trial, you have heard testimony of witnesses and may hear argument of counsel that the State did not utilize a specific investigative technique or scientific test. You may consider these facts in deciding whether the State has met its burden of proof. You should consider all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case. Your responsibility as jurors is to determine whether the State has proven based upon the evidence the defendant's guilt beyond a reasonable doubt.

*Atkins*, 421 Md. at 441-42, 26 A.3d at 982-83 (emphasis omitted). *Atkins*, in distinguishing

*Evans*, explained that

> the relevant legal reasoning [in *Evans*] regarding the instruction is dicta. As the court stated, the record clearly demonstrates that defendants counsel failed to object to the instruction at issue during the proceedings, and further that the defendant's failure to raise such issue in the trial court precludes us from such consideration on appeal. Despite holding that the issue was waived, the intermediate appellate court engaged in a legal analysis of the issue, which was therefore not authoritative or essential in the determination of the case. Further, unlike the case at hand, the missing evidence in *Evans*, i.e., photographic or video evidence of the drug transaction, was not of critical importance to the case. Instead, the State relied on the eyewitness testimony and identification of two detectives directly involved in the transaction. The failure of police to provide additional evidence was therefore not a crucial issue, despite the defense argument that such evidence could possibly have served to bolster the State's case in order to establish guilt beyond a reasonable doubt . . . Unlike in *Evans* where the non-existent evidence, pictures or video of the transaction, were supplemental evidence

29

which would have supported the eye witness accounts, the evidence lacking here could have been direct evidence to affirmatively linking the knife introduced to the alleged assaults . . . . Finally, in *Evans*, defense counsel gave "robust and vehement closing argument" in addition to extensive cross-examination on the issue of the failure of police to record the transaction . . . . In the present case, defense counsel briefly cross-examined on the issue, but did not argue lack of evidence in closing. Unlike in *Evans*, where counsel distorted the law, thus requiring a curative instruction, counsel in the present case merely pointed out on cross-examination what procedures were available but did not incorrectly state the law or the State's burden.

*Atkins*, 421 Md. at 449-51, 26 A.3d at 987-88 (internal citation and quotation marks omitted). The Court held ultimately that

[t]he instruction did not adequately protect Atkins's right to a fair trial because the instruction invaded the province of the jury and constituted commentary on the weight of the evidence, which comment was improper. As stated by Atkins, it was the jury's function to determine what inferences were to be drawn from the police officer's failure to test the knife for DNA evidence. But the trial judge usurped this role. Basically, the instruction directed the jury to ignore the fact that the State had not presented evidence connecting the knife to the crime, implying that the lack of such evidence is not necessary or relevant to the determination of guilt, and to disregard any argument by defense to the contrary. In the words of Petitioner's counsel at oral argument before this court, 'the instruction effectively plugged a hole in the State's case.'

*Atkins*, 421 Md. at 453, 26 A.3d at 989-90.

In *Stabb*, the Court fleshed-out further the standard for evaluating the appropriateness of a CSI effect jury instruction. *Stabb*, 423 Md. at 456, 31 A.3d at 923. The trial court, at the close of the evidence and at the State's request and over defense counsel objection, propounded to the jury the following instruction:

During this trial, you have heard testimony of witnesses and may hear argument of counsel that the State did not use a specific investigative technique or scientific test. You may consider these facts in deciding whether the State has met its burden of proof. You should consider all the evidence or lack of evidence in deciding whether a defendant is guilty.

30

However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case. Your responsibility as jurors is to determine whether the State has proven based upon all the evidence the defendant's guilty beyond a reasonable doubt.

*Stabb*, 423 Md. at 460, 31 A.3d at 925. *Stabb* held that this instruction was given preemptively, i.e., before any explicit argument by the defense (in closing or otherwise) regarding the absence of DNA or fingerprint testing of the victim or her clothing. *Stabb*, 423 Md. at 471, 31 A.3d at 932. *Stabb* explained that the instruction given was identical to the one administered in *Atkins*, but

> [i]n *Atkins*, we found that the 'missing' forensic or other evidence connecting the alleged weapon to the crime was "of critical importance" to the State's case, as there was little evidence linking the foot-long knife recovered from Atkins's night stand with the crime. *Atkins*, 421 Md. at 450, 26 A.3d at 988. Here, the lack of forensic evidence, i.e., DNA or fingerprints corroborating Stabb's asserted misconduct towards Kaylen J., may not have been as critical to the strength of the State's case because of the victim's testimony and the circumstantial evidence supplied by the State's other witnesses. In closing, although defense counsel commented on the lack of physical evidence, the overwhelming majority of her argument focused on the State's reliance on a single child witness, conflicting statements of the State's other witnesses, motive of Melissa R. and Jane R. to influence Kaylen J.'s statements, Stabb's alibi, and possibility of an alternative assailant. Nonetheless, the lack of scientific evidence was an integral part of the defense's theories.

*Stabb*, 423 Md. at 470-71, 31 A.3d at 931-32.

*Stabb* concluded

> that although we remain persuaded that 'anti-CSI effect' jury instructions are not improper per se, under the facts of this case, the trial court abused its discretion in providing essentially a preemptive jury instruction that there was no legal requirement for the State to utilize any specific investigative technique or scientific test to prove its case.

*Stabb*, 423 Md. at 462–63, 31 A.3d at 928 (internal quotations omitted). The CSI effect jury instruction relieved the State of its burden to prove Stabb was guilty beyond a

31

reasonable doubt, invaded the province of the jury, and, thus, violated Stabb's constitutional right to a fair trial. *Stabb*, 423 Md. at 472, 31 A.3d at 932.

In *Robinson*, the next most recent appellate decision (before *State v. Armstead*, No. 1148, 2018 WL 67986, ___ Md. App. ___, ___ A.3d. ___ (Md. Ct. Spec. App. Feb. 1, 2018)) addressing significantly a CSI effect message situation, the Court held that the trial court's anti-CSI effect instruction was not warranted by the trial record. *Robinson*, 436 Md. at 580, 84 A.3d at 81. During opening statement and closing argument, Robinson contended that there was no scientific evidence of wrongdoing linking him to the charged crime. *Robinson*, 436 Md. at 566-68, 70, 84 A.3d at 72-73, 75. The trial judge instructed the jury at the close of all evidence, over defense counsel's objection,[28]

> During this trial, you've heard testimony of witnesses and may hear argument of counsel that the State did not utilize a specific investigative technique or scientific tests. You may consider these facts in deciding whether the State has met its burden of proof. You should consider all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case. Your

---

[28] Counsel objected initially to the instruction when proposed at a bench conference, asserting that he did not believe that "the evidence in the case has warranted that such an instruction be given and other than a standard argument given with regard to the absence of evidence to convict my client, I don't believe that there's any other justification for giving that instruction in this case." *Robinson*, 436 Md. at 568, 84 A.3d at 74. The judge replied:

> All right, well, based upon the opening statement in which it was suggested that there wasn't any fingerprint or DNA evidence, and then what may actually have been off the record, which was our colloquy when we were preparing instructions, it's my understanding that the defense may be arguing, as good defense attorneys do, that there wasn't any scientific link of the defendant to the crime. So I think it's generated by the proffered arguments here and I'll note your objection and overrule it.

*Robinson*, 436 Md. at 568-69, 84 A.3d at 74.

responsibility as jurors is to determine whether the State has proven based upon the evidence, the defendant's guilt beyond a reasonable doubt.

*Robinson*, 436 Md. at 561-62, 84 A.3d at 69-70. (emphasis omitted). *Robinson* echoed *Stabb* iterating that "the 'anti-CSI effect' instruction should not be given preemptively, as was suggested . . . by the judge when he addressed *possible closing argument* by defense counsel." *Robinson*, 436 Md. at 579, 84 A.3d at 80 (emphasis added). The Court explained that

> [w]hile it is true that Robinson's counsel opened by saying, in part, '[t]here will not be any fingerprints from any door . . . [t]here won't be his DNA on anything, not on any screwdriver, not on any weather[-]stripping, not on any piece of tape, not on anything. Quite frankly, there's just not, there's absolutely no evidence beyond a reasonable doubt that Mr. Robinson committed these crimes,' *a mere reference to the lack of evidence does not trigger giving an 'anti-CSI effect' instruction.* We have reflected, for example, when reference has been made by defense counsel to the lack of fingerprint evidence, that, when the State has failed to utilize a well-known, readily available, and superior method of proof to link the defendant with the criminal activity, the defendant ought to be able to comment on the absence of such evidence. Certainly, lack of evidence is a common defense in a criminal case to generate reasonable doubt just as in the instant case.
>
> Robinson's counsel's opening statement and cross-examination merely pointed out what procedures might have been available to the State, but did not misstate the law or the State's burden. *Robinson's* counsel cross-examined the officers regarding whether testing had been ordered to compare the screwdrivers recovered to pry marks on the door to the apartment and whether fingerprint or DNA tests had been ordered, but did not insinuate that the State had any obligation to perform such testing or that had tests been performed, the results of such testing would have favored his client.

*Robinson*, 436 Md. at 579–80, 84 A.3d at 80–81 (emphasis added) (internal citation and quotation marks omitted).

Looking to the record of Taylor's trial, we find no overreaching by the defense during trial in its maintenance of its contention as to the impact of the State's failure to adduce forensic evidence linking Taylor to the crime scene, such as might justify the giving of a curative CSI effect instruction. Taylor's opening argument included the familiar refrain:

> And it's all going to boil down to that one identification a month later, because there are no other witnesses, there is no other forensic evidence, fingerprints, anything like that, it's going to come down to that one identification

Taylor's cross-examination of Detective Kaiser followed that announced thrust:

> [Taylor]: You described processing the door, right?
>
> [Detective Kaiser]: Yes.
>
> [Taylor]: Tried but couldn't get prints?
>
> [Detective Kaiser]: Yes.
>
> \*               \*               \*
>
> [Taylor]: So is there any reason the door wasn't processed or fingerprinted at the time, 1:05 or 1:15 a.m.?
>
> [Detective Kaiser]: Unfortunately I cannot answer that, I was not there. I was not called out that evening. I noticed the problem when I reviewed the case that morning.
>
> \*               \*               \*
>
> [Taylor]: Did you attempt to secure any fingerprints from inside the house?
>
> [Detective Kaiser]: No, sir.

[Taylor]: Did there ever come time when you learned that a knife may have been employed by [the victim]?

[Detective Kaiser]: Yes.

[Taylor]: Did there ever come a time when you secured that knife?

[Detective Kaiser]: No.

Appreciating that the defense pointed-out the lack of forensic evidence as part of the State's case, the State, in its re-direct examination of Detective Kaiser, sought to explain why that was so:

[Taylor]: [Detective] Kaiser, why did you not secure the knife?

[Detective Kaiser]: At the time, well, when I reviewed the report I understood that it was not recovered. And based on the fact that the, I did not believe there was any evidentiary value to that knife at the time. And still today I still don't. Yes, the victim did have that and [] Yes, the victim did have that in her possession to ward off the suspect when he entered her residence, but he was never touched with that knife to indicate any further evidence that we needed.

[Taylor]: Okay. It never came to your attention that possibly the victim touched the Defendant with the knife?

[Detective Kaiser]: No.

Taylor, in his closing, revisited briefly the defense's characterization of the case that, in the absence of corroborating evidence (forensic or otherwise), it came down to the credibility and/or strength of the victim's testimony:

There is no corroborating evidence. As the judge said, there is no legal requirement for DNA, and whether it could've been gotten and it wasn't gotten or it wasn't there, I think for this analysis it makes very little difference.[29]

---

[29] About this, more will be said anon.

35

*       *       *

There is nothing. No corroborating evidence. So [w]e're left with only for you to consider the identification of one person, and fortunately the judge helped us there as well. The law does. Identification of the Defendant by a single eyewitness as the person who committed the crime, if believed beyond a reasonable doubt, we'll get to beyond a reasonable doubt in a minute, can be enough evidence to convict the Defendant.

However, you should examine the identification of the Defendant with great care.

The State retorted. In her closing, the prosecutor argued:

Same reason that there is no forensic evidence. How this crime was committed. The decisions this defendant made. No forensic evidence.

Think about it, ladies and gentlemen. This crime, is it likely to leave any physical evidence behind? Likely at all? You heard testimony that the door was printed, and you heard Detective Kaiser's testimony there were smudges, no usable prints . . .

And we talk about the bag, the cloth bag, the Vera Bradley messenger bag. It's a cloth bag, ladies and gentlemen. It's a cloth bag. Just as my fingerprints are not going be on your shirt, they're not going to be on the bag. Just as if I touch you on the shoulder, my DNA is not going to be left there.[30]

The trial judge's instruction here falls squarely within the prohibited circumstances staked-out in *Robinson*, *Stabb*, and *Atkins*. The central issue in Taylor's trial was the identity of the malefactor. The State's case was dependent principally on the victim's statements given to police, her trial testimony, and her identification of Taylor as her assailant during a photo array a month after the incident. Taylor, in his opening statement,

---

[30] The cloth bag referred to the victim's purse, in which her wallet was located. The prosecutor's argument here is quite thin. Science teaches that human beings shed epithelial cells constantly. Thus, it is wrong to argue that it is impossible for DNA to be left by a touch on fabric; however, Taylor did not object to this argument on that ground.

36

argued simply that the State's case will "boil down to that one identification a month later, because there are no other witnesses, there is no other forensic evidence, fingerprints, anything like that, it's all going to come down to that one identification." Being able to argue the significance of the absence of corroborative evidence, without the court instructing the jury of the diminished significance of such an argument, was of some consequence to Taylor's defense. *Compare Atkins*, 421 Md. at 450, 26 A.3d at 988 (the missing knife that was used was critically important to the case), *with Armstead*, No. 1148. at 38-40 (noting that the missing scientific evidence would have been cumulative to the evidence presented and was not critical to the State in meeting its burden of proof to convict Armstead), *and Evans,* 174 Md. App. at 553-56, 922 A.2d at 622-624 (the missing evidence, i.e., photographic or video evidence of the drug transaction, was not of critical importance to the case.).

Taylor did not misstate the law or the State's burden, which might have necessitated a "curative instruction," *See Stabb*, 423 Md. at 473, 31 A.3d at 933, and the trial judge gave the instruction preemptively (as he announced earlier he intended to do) before closing arguments by counsel (which *Stabb*, *Atkins*, and *Robinson* warned against).

The trial judge's instruction was: (a) distinguishable from the CSI effect instruction and facts in *Evans*; (b) as prejudicial potentially as the CSI effect instructions in *Stabb*, *Atkins*, and *Robinson*; and, (c) analogous to the CSI effect instruction in *Allen.* Included within the CSI effect instructions given by the trial judges in *Robinson*, *Stabb*, *Atkins*, and *Evans*, (nearly identical to one another) was embedded a reaffirmation that the responsibility of jurors is to determine whether the State has proven, based upon the

37

evidence, the defendant's guilt beyond a reasonable doubt. *See Robinson*, 436 Md. at 561–62, 84 A.3d at 69–70 ("Your responsibility as jurors is to determine whether the State has proven based upon the evidence, the defendant's guilt beyond a reasonable doubt."); *Stabb*, 423 Md. at 460, 31 A.3d at 925 ("Your responsibility as jurors is to determine whether the State has proven based upon all the evidence the defendant's guilt beyond a reasonable doubt."); *Atkins*, 421 Md. at 441–42, 26 A.3d at 982–83 ("Your responsibility as jurors is to determine whether the State has proven based upon the evidence the defendant's guilt beyond a reasonable doubt."); *Evans*, 174 Md. App. at 562, 922 A.2d at 628 ("Your responsibility as jurors is to determine whether the State has proven, based on the evidence, the defendants' guilt beyond a reasonable doubt."). The trial judge here made no such contemporaneous iteration within his CSI effect message, making the CSI effect instruction here analogous further to that in *Allen*. We conclude therefore that the giving of the instruction in Taylor's trial was an abuse of discretion and erroneous as a matter of law.

### e. *But Was The Error Harmless?*

The State asserts that, if we find erroneous the trial judge's CSI effect instruction, the error "was harmless beyond a reasonable doubt." In support of this view, the State points to Taylor's closing argument where he reminded the jury, "[a]s the judge said, there is no legal requirement for DNA." The State sees this as Taylor's affirmation that "such evidence would not matter anyway."

We explained in *Armstead*, in the context of a CSI effect *voir dire* question,

> [w]hen a trial court injects erroneously a CSI effect [message], in order for a court to find harmless error, the court must be satisfied beyond a reasonable doubt that the abuse of discretion was harmless. *Hall*, 437 Md. at

540, 87 A.3d at 1291; [*State v. *]*Stringfellow*, 425 Md. [461,] 474, 42 A.3d [27,] 35 [(2012)]. We must, "upon an independent review of the record, '"be satisfied that there is no reasonable possibility'" that the assumed error caused impermissibly the guilty verdict." *Stringfellow*, 425 Md. at 474, 42 A.3d at 35 (citing *Lee v. State*, 405 Md. 148, 163, 950 A.2d 125, 134 (2008) (quoting *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976))).

The record must demonstrate that the reference to a lack of scientific evidence *was not material to the contested issue*. *Compare Hall*, 437 Md. at 540, 87 A.3d at 1291 (in an armed carjacking case, the Court held a CSI effect jury instruction regarding the lack of scientific evidence, i.e., a photograph of the defendant controlling the victim's car, was not material or necessary to "shed any light" on how the defendant gained control of the victim's car), *and Evans*, 174 Md. App. at 570, 922 at 632-33 (the lack of scientific evidence was not critically important to the case; the State could prove guilt beyond a reasonable doubt with an eyewitness's testimony and identification by two detectives involved directly in the transaction), *with Atkins*, 421 Md. at 50, 26 A.3d at 988 (the missing scientific evidence was critically important to the case, i.e., "[t]he evidence lacking here could have been direct evidence to affirmatively linking the knife introduced to the alleged assaults.").

Factors relevant in determining whether an erroneous CSI effect [message] was given harmlessly include, but are not limited to: the timing and content of the CSI [effect message], *see Morris*, 204 Md. at 490, 496-97, 42 A.3d at 85, 88-9, whether the erroneously given question was "reiterated during jury instruction or other comments from the bench while the jury was present;" the presence of alleviating jury instructions or "follow-on instruction/*voir dire* question"; whether the State or defense stressed the importance of the CSI effect [message] in trial, and whether the judge allowed the parties an unrestrained chance to argue the adequacy or inadequacy of scientific evidence necessary to his or her defense. *See Stringfellow*, 425 Md. at 474-77, 42 A.3d at 34-6; *Kelly* [*v. State*], 195 Md. App. [403,] 434 n.18, 6 A.3d [396,] 414 n.18 [(2010)].

*Armstead*, No. 1148, at 29-31. Moreover, an eyewitness identification, if believed, is sufficient to find a defendant guilty beyond a reasonable doubt. *See Branch v. State*, 305 Md. 177, 183–84, 502 A.2d 496, 499 (1986) (explaining why a single eyewitness identification is sufficient to permit a jury to find guilt beyond a reasonable doubt).

Taylor's objection to the trial judge's CSI effect jury instruction was overruled. Because defense counsel could not un-ring that bell, Taylor, during his closing argument, chose to make the best of the position in which he found himself. According to Taylor, there was no forensic evidence linking Taylor to the crime. The State's case was dependent principally on the victim's accounts of the incident and her photo array identification. Taylor's closing argument stressed arguments regarding unreliability in the victim's testimony and that it was uncorroborated by any other direct or circumstantial evidence. Taylor's closing argument, however, is (and was seen by the jury to be) insufficient to overcome the victim's eyewitness identification of him from a photo array.

In *Armstead*,[31] Kevin Armstead was convicted of conspiracy to commit first-degree murder and second-degree murder. *Armstead*, No. 1148 at 3-6. The State's case depended principally upon Leroy Simon, an eyewitness, whose testimony explained that he observed Armstead and two other individuals enter the home of Ricardo Paige (the deceased). *Id.*

---

[31] During *voir dire* on the first day of a seven-day trial, the judge queried the venire:

> Now I'm going to assume that many of you watch way too much television including those so-called realistic crime shows like Law and Order and CSI New York and CSI Miami and CSI Glenn Burnie and the rest of them. I trust you understand that these crime shows are fantasy and fiction and for dramatic effect to entertain you they claim to rely upon 'scientific evidence' to convict people.
> This is certainly acceptable as entertainment but you must not allow your entertainment to interfere with your solemn duties as a juror. Therefore, if you are currently of the view that you cannot convict the defendant without 'scientific evidence' regardless of all of the other evidence in the case and regardless of the instruction that I give you as the law, please stand. All right, I see no responses.

*Armstead*, No. 1148 at 6-7.

Simon heard "'tussling from inside the house, several gunshots, and then watched Armstead and [two other individuals] emerge [and flee] from Paige's home." *Armstead*, No. 1148 at 39. We found that, had the trial judge's propounded CSI effect *voir dire* question been error,[32] we were satisfied beyond a reasonable doubt that the supposed error was harmless. *Armstead*, No. 1148 at 40. "The recovery of any DNA placing Armstead at the scene would have bolstered Simon's testimony, but would have been cumulative[33] and thus not essential in the State's overall case." *Id.*

---

[32] We found unpreserved the question of whether the trial judge's CSI effect *voir dire* question was erroneous because Armstead's trial counsel failed entirely to object to the question when posed by the trial judge. Moreover, because the issue was unpreserved and not before us on direct appeal, we declined to apply a retrospective analysis of *Stabb* and *Atkins*, as authorized by *Allen.* Armstead failed ultimately to meet his burden to prove the ineffectiveness of his trial counsel.

[33] Other circumstances in *Armstead* that lead us to our conclusion that the error was harmless included:

> [n]either the trial court nor the parties' counsels repeated the anti-CSI effect message (as such) during the trial. [The trial court administered curative instructions to the jury as well as reiterated] the State's burden of proof later in its [] instructions [to the jury]. These instructions . . . assisted in dislodging any residual bits of potential prejudice concerning the weight of presented (or unpresented) evidence and reminded the jury of the State's fixed burden of proof . . . .

> \* \* \*

> Armstead was arrested in Georgia (where he had been living under the alias 'James L. Jefferson' for the two weeks after the police discovered Paige's body). It was unlikely at that point in time that DNA evidence of Paige would be located on Armstead's person. [An eyewitness] saw Armstead [and other unidentified suspects] . . . [ and Armstead made a voluntary and inculpatory statement during an interrogation to a police detective] . . . .

41

In the present case, there is a *direct* eyewitness identification of Taylor by the victim as the perpetrator, which we have found in many cases to be sufficient unto itself to permit a jury to find guilt beyond a reasonable doubt. *See Belton v. State*, 152 Md. App. 623, 639, 833 A.2d 54, 64 (2003) ("The earlier identification of appellant as the assailant, if believed, was sufficient to establish beyond a reasonable doubt his agency in the crimes for which he was convicted. We are not prepared to say that no rational trier of fact could have reached such a verdict."). As in *Armstead*, fingerprint or DNA evidence connecting Taylor to the crime scene "would have bolstered [the victim's] testimony, but would have been cumulative and thus not essential in the State's overall case." *Id.*

Although we hold that the trial judge erred by giving preemptively a CSI effect instruction on this record, we are satisfied beyond a reasonable doubt, however, that the error was harmless.

## II. The "Continue To Deliberate" Instruction.

Jury deliberation began during Taylor's trial at 2:05 p.m. At 3:10 p.m., the jury submitted a note to the trial judge indicating "we are evenly split, six guilty, six innocent. Is it imperative to come to a unanimous verdict or is a hung jury okay?" The judge brought the jury back to the courtroom and, in response to the note, charged them with a modified

*Allen*[34] instruction, coupled with a 2:01 instruction from the Maryland Criminal Pattern

Jury Instructions (MPJI–CR 2:01),[35] reminding the jury of their duty to deliberate:

> THE COURT: I have read your note, ladies and gentleman. I have read your note to the lawyers.
>
> What I want to tell you, though, is this. You have only deliberated, apparently it's an hour, maybe just about an hour. This is a very important case, and as you know the verdict must be the considered judgment of each one of you. I've told you before you all have to have agree before you can arrive at verdict. Which means your verdict must be unanimous.
>
> But you must consult with each other, one another, and deliberate with a view towards reaching an agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. Do not hesitate during the deliberations to re-examine your own views or your own position. You should change your opinion if you're

---

[34] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896). "An *Allen*-type charge refers to the type of instruction administered to juries upon an indication that they are deadlocked, or initially as a general unanimity and duty to deliberate instruction before the jury commences deliberations." *Hall v. State*, 214 Md. App. 208, 218–19, 75 A.3d 1055, 1061 (2013); *see also Kelly v. State*, 270 Md. 139, 144, 310 A.2d 538, 542 (1973) (the Court of Appeals held that the language used in *Allen* is coercive and may not be used in Maryland); *Burnette v. State*, 280 Md. 88, 97, 371 A.2d 663, 667 (1977) ("[The ABA-approved instruction] is superior to the traditional *Allen* instruction in several respects. It does not charge the minority to doubt the reasonableness of its convictions when they are not concurred in by the majority. It thus avoids the coercive tendency of the *Allen* charge.").

[35] 2:01 from the Maryland Criminal Pattern Jury Instructions states
The verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. In other words, your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations, do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

43

convinced you're wrong. You do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.

Which I think all of you know what I have just said, it means you just all twelve face different walls and not talk to each other, you have to talk about the evidence and you have to discuss with each other what you've heard and re-examine your views if you think it's necessary. But you do not surrender your honest belief as to the weight or effect of the evidence just to make someone else happy.

So with that: I'm going to ask — it's a very important case. A lot of time has been spent on it. I'm going to ask for you to go back into your jury room keeping that in mind and continue with your deliberations. Because, as the note said, a hung jury is not a verdict and to have a verdict you have to be unanimous one way or another. So you can now go back in and resume your deliberations.

The jury resumed deliberation and, at 4:55 p.m., returned a guilty verdict against Taylor.

    a. *Appellant's Argument.*

Taylor contends that, despite the absence of any objection to the trial judge's instruction, this Court should take cognizance of the critical importance of the trial judge's abridgment and provide him relief based on the trial judge's plain error. Stated simply, Taylor avers that the trial judge erred by failing to "answer the jury's straightforward question with a straightforward answer." Moreover, the trial judge erred by leading "the jurors to believe that they were required to reach a unanimous verdict . . . [and the trial judge] deviated substantially from the language in MPJI–CR 2:01 and plac[ed] too much emphasis on the importance of coming to a verdict."

    b. *Appellee's Argument.*

The State asserts that Taylor's challenge to the trial judge's "continue to deliberate" instruction is not preserved for appellate review. This Court should decline to review,

44

under plain error, Taylor's appellate challenge on this point. Taylor "failed to demonstrate that the trial [judge] erred" when admonishing the jury with this instruction. The State argues that the trial judge's instruction was substantially similar to the MPJI–CR 2:01, and did not "alter the spirit or substance of the pattern instruction." Taylor, therefore, failed to demonstrate "that the error was 'plain' or that it was egregious[] in light of the instructions as a whole. Nor is this a unique issue for which there is a need to use an unpreserved contention as a vehicle for illuminating an area of law." (quotation marks omitted).

      c. *The Short Answer.*

As we explained *supra*, Maryland Rule 4-325(e), governing objections to jury instructions, states:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

This rule "makes clear that an objection to a jury instruction is not preserved for review unless the aggrieved party makes a timely objection after the instruction is given and states the specific ground of objection thereto." *Gore*, 309 Md. at 207, 522 A.2d at 1339. "An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object." Maryland Rule 4–325(e).

Instances in which we observe, under plain error, an un-objected-to error are when there are "compelling, extraordinary, exceptional or fundamental [circumstances] to assure the defendant a fair trial." *State v. Brady*, 393 Md. 502, 509, 903 A.2d 870, 874 (2006)

45

(quoting *Conyers v. State*, 354 Md. 132, 171, 729 A.2d 910, 931 (1999)). "Moreover, in the context of erroneous jury instructions, the plain error doctrine has been used sparingly." *Conyers*, 354 Md. at 171, 729 A.2d at 931. It is clear that "[t]he decision of whether to give supplemental instructions is within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of discretion." *Sidbury v. State*, 414 Md. 180, 186, 994 A.2d 948 (2010). Moreover,

> A trial judge's determination to have a jury continue deliberating or to declare a mistrial is a matter largely within his discretion. This particular discretion has been deemed broad, and a trial judge's decision whether or not to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.

*Mayfield v. State*, 302 Md. 624, 631, 490 A.2d 687, 691 (1985) (internal quotation marks omitted). *Newton v. State*, 455 Md. 341, 364, 168 A.3d 1, 14 (2017), set forth the following for a plain error analysis:

> Before we can exercise our discretion to find plain error, four conditions must be met: (1) there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant; (2) the legal error must be clear or obvious, rather than subject to reasonable dispute; (3) the error must have affected [] appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the [trial] court proceedings; and (4) the error must seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.

The challenge to meet all four of those steps is formidable. *See Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009).

In the present case, Taylor's counsel did not object to the judge's supplemental instructions, including the trial judge's prefatory and closing statements wrapping around MPJI–CR 2:01. Accordingly, this issue has not been preserved for appellate review.

46

Moreover, we do not find Taylor's challenge "compelling, extraordinary, exceptional or fundamental" to persuade us to engage in plain error review.

In *Hall v. State*, 214 Md. App. 208, 220–21, 75 A.3d 1055, 1062 (2013), we opined that, when

> an *Allen*-type instruction is given as the result of an apparent deadlock, the trial court "should closely adhere to the wording of the ABA recommended instruction." *Kelly* [*v. State*], 270 Md. [139,] 144, 310 A.2d 538[, 542 (1973)]. However, the court is not "imprison[ed] . . . within the walls of foreordained verbiage [,]" and the trial judge may personalize the charge. *Burnette* [*v. State*], 280 Md. [88,] 98, 371 A.2d 663[, 667 (1977)] (citing *Kelly*, 270 Md. at 142, 310 A.2d [at 541]). When the trial court does not adhere closely to the language of the approved instruction, we must review the court's instruction carefully to determine "whether the province of the jury has been invaded and the verdict unduly coerced." *Kelly*, 270 Md. at 144, 310 A.2d [at 542]. Any deviation from the pattern instruction should be largely in form and style, and the instruction must adhere to the spirit and substance of the ABA-approved instruction. *See Burnette*, 280 Md. at 98, 101, 371 A.2d [at 668] ("Deviations in substance will not meet with our approval. Coercion of the jury for the purpose of breaking a deadlock must be avoided.").

Taylor contends that the language the trial judge added before and after MPJI–CR 2:01 coerced the jury into reaching a unanimous verdict. We disagree.

Under a contextual review, the trial judge's alleged coercive language before and after he administered the MPJI-CR 2:01 language does not rise to a level undermining the fairness of Taylor's trial. The trial judge's prefatory remark that "[t]his is a very important case, and as you know the verdict must be the considered judgment of each one of you" is not problematic, as Taylor contends. We, like the *Hall* Court, find no fault in the trial judge remarking on the importance of Taylor's trial. *See Hall*, 214 Md. at 208, 222, 75 A.3d at 1063. ("Although the judge advised that deliberating with a view to reaching an agreement

47

is an important element of the deliberation process, this statement was followed by the qualification contained in MPJI–Cr 2:01: If you can do so without violence to your own individual judgment.").  The judge qualified to the jury that their decision must be the considered judgment of each of them.  Moreover, he did not highlight the decisional split amongst the jurors.

The trial judge instructed the jury as to their duty to deliberate, with only minor deviations from MPJI–Cr 2:01.  Further, he continued instructing the jury, stating "you have to talk about the evidence and you have to discuss with each other what you've heard and re-examine your views if you think it's necessary.  But you do not surrender *your honest belief* as to the weight or effect of the evidence just to make someone else happy." (emphasis added).  Thus, the judge emphasized continually the importance of the jurors' individualized judgment.  There is no indication from the record that the judge elevated the importance of an adjudication of Taylor's trial over the juror's individual judgment, or coerced ultimately the jury to reach a unanimous verdict.  We believe that the entirety of the instruction adhered to the spirit of MPJI–Cr 2:01, and we decline to find error, plain or otherwise.

## III.    Taylor's Sentence – Were Appropriate Considerations In Play?

### a. *Appellee's Argument.*

The State contends that Taylor failed to preserve this challenge for appellate review. The State maintains that "Taylor did not object when the [trial judge] imposed his sentence, [and] this Court should decline to consider Taylor's claim of error."

On the merits, the State reminds us that trial judges are vested with virtually boundless discretion when sentencing a criminal defendant. As such, the trial judge here considered permissibly Taylor's prior criminal record through the State's proffered records. The State represented that "Taylor had one prior adult conviction, where he had pleaded guilty to indecent exposure before the same trial judge [] in January of 2008 . . ., [Taylor had] 13 contacts with the Juvenile Justice System, and [the State] explained that only two [of those juvenile contacts] had resulted in adjudications." Moreover, the State explained that "Taylor was pending trial on two other [criminal] cases 'of the very same nature'" as the charges in the present proceeding.

b. *Appellant's Argument.*

Taylor responds to the State's non-preservation argument that he made statements to the trial judge indicating his dissatisfaction with the judge's contemplation to deviate from the sentencing guidelines based on impermissible considerations. Thus, to Taylor, his appellate question is preserved for our review.

On the merits, Taylor contends that the trial court "relied on impermissible considerations in sentencing [him] to thirty years executed time where the sentencing guidelines called for 1-5 years." Specifically, the judge, as Taylor sees it, considered erroneously the State's presentation of Taylor's contacts with the juvenile system not resulting in adjudications and his two pending adult charges. The pending charges did not evince a pattern justifying the trial court in giving Taylor a sentence longer than the range

49

recommended by the Maryland Sentencing Guidelines.[36]  Thus, the trial judge relied "on

the information offered by the State, particularly where the record offers no other plausible

explanation for the radical upward departure."

        c. *There Was No Abuse of Discretion.*

           i. *Preservation.*

"Under Maryland Rule 8–131(a),[37] a defendant must object to preserve for

appellate review an issue as to a trial court's impermissible considerations during a

sentencing proceeding." *Sharp v. State*, 446 Md. 669, 683, 133 A.3d 1089, 1097 (2016);

*see Abdul–Maleek v. State*, 426 Md. 59, 69, 43 A.3d 383, 389 (2012) (held unpreserved

where a defendant failed to object to the trial court's evidentiary consideration during a

sentencing proceeding).  In a criminal case, "[f]or purposes of review by the trial court or

on appeal of any other ruling or order [other than objections to evidence] it is sufficient

that a party, at the time the ruling or order is made or sought, makes known to the [trial]

court . . . the objection to the action of the [trial] court." Maryland Rule 4–323(c).

In *Sharp*, the Court of Appeals held preserved the question of whether the trial court

considered impermissibly, during sentencing, Sharp's decision not to plead guilty, based

---

[36] The judge iterated that the Maryland Sentencing Guidelines endorse a 1-5 year
sentencing range for Taylor's convictions.

[37] Md. Rule 8-131(a) states:
    The issues of jurisdiction of the trial court over the subject matter and, unless
    waived under Rule 2-322, over a person may be raised in and decided by the
    appellate court whether or not raised in and decided by the trial court.
    Ordinarily, the appellate court will not decide any other issue unless it plainly
    appears by the record to have been raised in or decided by the trial court, but
    the Court may decide such an issue if necessary or desirable to guide the trial
    court or to avoid the expense and delay of another appeal.

on his counsel stating to the judge, "I don't believe in punishing someone for wanting to go to trial." *Sharp*, 446 Md. at 683, 133 A.3d at 1097. The Court explained that

> Sharp's counsel's statement made known his objection to the circuit court's allegedly penalizing Sharp by impermissibly considering during sentencing that Sharp declined the State's and the circuit court's plea offers . . . Sharp's counsel's agreement with the circuit court was nothing more than an acknowledgement of the well-known principle that one of the reasons that the State may offer—and, upon the defendant's agreement, the trial court may accept—a plea agreement is to save the victim and other witnesses the experience of testifying and being cross-examined at trial.

*Sharp*, 446 Md. at 684, 133 A.3d at 1098.

*Sharp* is instructive when comparing Taylor's explicit statements evincing his dissatisfaction with the trial judge's entertainment of the State's sentencing proffer for an outcome significantly over the recommended sentencing guidelines' range:

> [The State:] Your Honor, the State believes the appropriate sentence in this case is 38 years in the Division of Corrections.
>
> *          *          *
>
> [Taylor' Counsel:] Your Honor, I've not had the opportunity to review what the guidelines are, but I assume that they are significantly less than the maximum sentence.
>
> [The Court:] The guidelines are one to five years.
>
> [Taylor's Counsel:] Yes, Your Honor. And what I would submit is the guidelines take into account, I'm in no way diminishing what the victim in the case felt, but what we have is a young man who is 20 years old. His mother and family have been here throughout this process. I've spoken with him numerous times. He is a very soft-spoken; very pleasant and intelligent young man . . .
>
> I think if you take into account the concept of progressive sentencing, under any analysis I think the absolute maximum sentence for someone who's 20 years old is a little aggressive. So I ask the Court to fashion a sentence that, the Court's indication, I'm assuming is that the guidelines

appear too low to this Court, but I ask the Court to fashion a sentence that takes all that into account, and takes into account his age.

He has one prior conviction. The State refers to a pattern of sentencing, well, we have other, it's not a pattern until he is convicted. We have other matters that we will address in other forums, and I would ask the Court to take this one on its own merits.

We believe that Taylor made known to the court sufficiently his exception to the trial judge considering any pending criminal charges in other cases or un-adjudicated juvenile matters.

### ii. The Merits.

Three grounds exist for appellate review of the adequacy of a sentence: "(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) whether the [trial court] was motivated by ill-will, prejudice[,] or other impermissible considerations; and (3) whether the sentence is within statutory limits." *Sharp*, 446 Md. at 685–86, 133 A.3d at 1099 (quoting *Jones v. State*, 414 Md. 686, 693, 997 A.2d 131, 135 (2010)) (internal quotation marks omitted). Indeed, "sentencing judge[s] [are] vested with virtually boundless discretion." *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981).

Judges should fashion sentences "based upon the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Jackson v. State*, 364 Md. 192, 199, 772 A.2d 273 (2001) (quoting *Poe v. State*, 341 Md. 523, 531–32, 671 A.2d 501, 505 (1996)) (internal quotation marks omitted). We "must read the trial court's statements in the context of the entire sentencing proceeding to determine whether

the trial court's statements could lead a reasonable person to infer that the trial court might have been motivated by an impermissible consideration." *Sharp*, 446 Md. at 689, 133 A.3d at 1101 (brackets and internal quotation marks omitted).

There is nothing in Maryland law mandating that the principles of the Sentencing Guidelines bind sentencing judges. *Teasley v. State*, 298 Md. 364, 370, 470 A.2d 337, 340 (1984).

> As stated in the preface to the revised Guidelines, the Guidelines are not mandatory; instead, they "complement rather than replace the judicial decision-making process or the proper exercise of judicial discretion." Judges, therefore, may sentence outside the range suggested by the Guidelines, either more or less severely, but in doing so they are requested to state reasons in writing for departing from the range of sentences recommended by the Guidelines  [but are not required to].

*Teasley*, 298 Md. at 367, 470 A.2d at 338.  Trial judges may view, therefore, along with past criminal convictions or criminal contacts with the justice system, "reliable evidence of conduct which may be opprobrious although not criminal, as well as details and circumstances of criminal conduct for which the person has not been tried." *Logan*, 289 Md. at 481, 425 A.2d at 643 (quoting *Henry v. State*, 273 Md. 131, 147-48, 328 A.2d 293, 303 (1974)).  Further, trial judges are free to consider reliable evidence concerning the events surrounding a criminal charge for which a defendant was acquitted. *Id.*

Taylor acknowledges, as he must, the deference afforded to trial judges during sentencing proceedings, but contends, nevertheless, that the "State offered no evidence whatsoever –reliable or otherwise – about these bald accusation of [Taylor's] criminal conduct." (quotation marks omitted).  We disagree.  The State produced the following at the sentencing proceeding:

[The State:] *Your Honor, [Taylor] has one adult conviction for indecent exposure. He pled guilty in front of Your Honor on January 23rd of this year.* He was sentenced to three years suspend all but nine months, placed on three years supervised probation, ordered at that time to have a psychological evaluation. And my understanding is that has not been completed at this point. That is his only adult conviction. [Taylor] has several other contacts, but none of which as an adult resulted in conviction.

THE COURT: *Is that why he's going be in front of me tomorrow, on a violation of probation?*

*[Defense Counsel]: Yes.*

[The State]: Yes, Judge. Your Honor, he has 13 contacts — if Your Honor is prepared and ready —

THE COURT: I'm ready to hear.

[The State:] . . . . [Taylor] has 13 contacts with the juvenile justice system, three of which involve assaults and reckless endangerment. Six of which involve thefts. Three of which involve burglaries. Four of which involve malicious destruction of property. Three that involve trespass. One resisting arrest, and one false report. Most notably he has a contact with DJS for malicious burning.

[Taylor], however, [] has [two] out of those 13 contacts . . . [that] resulted in adjudication. I'm sorry, two of those contacts resulted in adjudication. That is an offense that occurred 10/6/05, it was an assault second degree and reckless endangerment. The other, which it was adjudicated 12/23/05, the offense date 6/17/05, it's a malicious destruction of property, burglary in the third, and a trespass.

*          *          *

[The State:] Your Honor, the State is recommending the maximum and that it be run consecutive. This Defendant has quite a pattern of this behavior. *Not only was he convicted for an offense in '07, he is currently pending trial on two other pending cases of the very same nature.* I don't know if Your Honor would find it fruitful to defer sentencing until the resolution of those.

THE COURT: No, I don't think it's necessary.

[The State:] All right. He's stood trial, the one victim has been here all day, I actually excused her thinking that we might not go to sentencing so late in the day, her case went to trial November 19th. The jury was hung in that case. The State intends at this point to retry [Taylor] for those acts. *He stands trial in January for acts very similar in nature.*

(emphasis added).

It is clear that the trial judge considered permissibly reliable evidence[38] consisting of his prior contact with Taylor; the similarity in nature of Taylor's adult convictions to his present crimes; and his 13 juvenile contacts – especially given that Taylor was 20 years old at the time of his present conviction. We are not convinced that a reasonable person would infer that the trial judge's sentence was motivated by impermissible considerations. We find no abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED. COSTS IN THIS COURT TO BE PAID BY APPELLANT.**

---

[38] The reliability of the State's assertions were strengthened by Taylor's counsel's confirmation to the sentencing judge that Taylor was, in fact, to stand trial before the same sentencing judge the subsequent day for a violation of Taylor's probation for an indecent exposure conviction on 22 January 2008.